Jeffrey Paul Ehrlich (*Pro Hac Vice*)
**McGuireWoods LLP**
jehrlich@mcguirewoods.com
888 16th Street NW, Suite 500
Washington, DC 20006
Telephone: 202-857-1700

Jonathan Y. Ellis (*Pro Hac Vice*)
**McGuireWoods LLP**
jellis@mcguirewoods.com
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: 919-755-6688

Alicia A. Baiardo (SBN 254228)
**McGuireWoods LLP**
abaiardo@mcguirewoods.com
Two Embarcadero Center
201 Clay Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-844-9944

Grace G. Simmons (*Pro Hac Vice*)
**McGuireWoods LLP**
gsimmons@mcguirewoods.com
1075 Peachtree St. NE
Atlanta, GA 30309
Telephone: 404-443-5718

Nicholas Hoffman (SBN 284472)
**McGuireWoods LLP**
nhoffman@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310-315-8200

*Attorneys for Defendant Eightfold AI Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN KISTLER and SRUTI BHAUMIK, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EIGHTFOLD AI INC.,<br><br>Defendant. | Case No.: 3:26-cv-01768-YGR<br><br>**DEFENDANT EIGHTFOLD AI INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>**Judge:** Hon. Yvonne Gonzalez Rogers<br>**Date:** August 4, 2026<br>**Time:** 2 p.m.<br>**Location:** Courtroom 1, 4th Floor |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.      The FCRA claim fails because Eightfold is not plausibly a consumer reporting agency.... 2

      A.      Eightfold is in the business of licensing software, not assembling or evaluating information ................................................................................... 2

      B.      Nor does Eightfold's software assemble or evaluate as consumer reporting agencies do ........................................................................................... 4

      C.      The software's output is not a consumer report ........................................... 7

      D.      Eightfold does not sell its software's output to any third parties ............... 10

II.     The ICRAA and UCL claims fail for the same reason ....................................................... 12

III.    The requested remedies besides actual damages should be struck .................................... 12

      A.      Plaintiffs have not plausibly alleged punitive or statutory damages ......................... 13

      B.      Plaintiffs have not plausibly alleged injunctive or declaratory relief or nominal damages ............................................................................................ 15

CONCLUSION ............................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alamilla v. Hain Celestial Grp., Inc.*,
  30 F. Supp. 3d 943 (N.D. Cal. 2014) ................................................................................5

*Andrade v. Desert Champions LLC*,
  113 F. Supp. 3d 1020 (N.D. Cal. 2015) ...........................................................................13

*Apple Inc. v. Allan & Assoc. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020) ...............................................................................12

*Bergen v. Martindale-Hubbell, Inc.*,
  337 S.E.2d 770 (Ga. Ct. App. 1985) ..................................................................................9

*Cal. River Watch v. City of Vacaville*,
  39 F.4th 624 (9th Cir. 2022) ..............................................................................................7

*Connor v. First Student, Inc.*,
  423 P.3d 953 (Cal. 2018) .................................................................................................12

*Diaz v. Chase*,
  416 F. Supp. 3d 1090 (D. Nev. 2019) .................................................................................5

*Dubin v. United States*,
  599 U.S. 110 (2023) ........................................................................................................6, 7

*Erie Railroad Co. v. Tompkins*,
  304 U.S. 64 (1938) ...........................................................................................................13

*Ernst v. Dish Network, LLC*,
  49 F. Supp. 3d 377 (S.D.N.Y. 2014) .............................................................................9, 10

*Espinosa v. Bluemercury, Inc.*,
  No. 16-cv-7202, 2017 WL 1079553 (N.D. Cal. Mar. 22, 2017) .....................................13

*Finlay v. MyLife.com Inc.*,
  525 F. Supp. 3d 969 (D. Minn. 2021) .................................................................................9

*Garcia v. M-F Athletic Co.*,
  No. 11-cv-2430, 2012 WL 531008 (E.D. Cal. Feb. 17, 2012) .........................................13

*Gatabi v. FDA*,
  No. 24-cv-2398, 2024 WL 5077100 (N.D. Cal. Dec. 10, 2024).......................................12

*Guar. Tr. Co. of N.Y. v. York*,
　326 U.S. 99 (1945)................................................................................................13

*Gundersen v. Equifax Info. Servs., LLC*,
　683 F. Supp. 3d 1270 (D. Utah 2023)................................................................3, 4, 6, 14

*Haroff v. Experian Info. Servs., Inc.*,
　No. 18-cv-2154, 2019 WL 4168729 (D. Nev. Sept. 3, 2019)................................................4

*Johnson v. Experian Info. Solns., Inc.*,
　No. 18-cv-114, 2019 WL 951425 (E.D. Cal. Feb. 27, 2019) ...............................................5

*Khoja v. Orexigen Therapeutics, Inc.*,
　899 F.3d 988 (9th Cir. 2018) ...............................................................................5

*Lazy Y Ranch Ltd. v. Behrens*,
　546 F.3d 580 (9th Cir. 2008) ...............................................................................5

*Magallon v. Robert Half Int'l, Inc.*,
　311 F.R.D. 625 (D. Ore. 2015) ...........................................................................9, 10

*Marquez-Reyes v. Garland*,
　36 F.4th 1195 (9th Cir. 2022) ..............................................................................6

*McCready v. eBay, Inc.*,
　453 F.3d 882 (7th Cir. 2006) ...............................................................................6

*Moore v. Apple, Inc.*,
　73 F. Supp. 3d 1191 (N.D. Cal. 2014) ....................................................................12

*Roe v. LexisNexis Risk Solns. Inc.*,
　No. 12-cv-6284, 2013 WL 11246904 (C.D. Cal. Mar. 19, 2013)...........................................15

*Safeco Ins. Co. of Am. v. Burr*,
　551 U.S. 47 (2007)........................................................................................13, 14

*Skiles v. Tesla, Inc.*,
　440 F. Supp. 3d 1012 (N.D. Cal. 2020) ....................................................................9

*Sonner v. Premier Nutrition Corp.*,
　971 F.3d 834 (9th Cir. 2020)...............................................................................12

*Steckman v. Hart Brewing, Inc.*,
　143 F.3d 1293 (9th Cir. 1998) ..............................................................................5

*Sweet v. LinkedIn Corp.*,
　No. 14-cv-4531, 2015 WL 1744254 (N.D. Cal. Apr. 14, 2015).............................................7, 8

*Syed v. M-I, LLC,*
  853 F.3d 492 (9th Cir. 2017) ...................................................................................13

*Tavares v. Capitol Recs.,*
  No. 12-cv-3059, 2013 WL 968272 (N.D. Cal. Mar. 12, 2013) ................................12

*Thompson v. Nationstar Mortg. LLC,*
  No. 17-cv-2864, 2017 WL 3232549 (N.D. Cal. July 31, 2017) ................................4

*TransCore, LP v. Elec. Transaction Consultants Corp.,*
  563 F.3d 1271 (Fed. Cir. 2009)...................................................................................5

*Va. Is for Movers, LLC v. Apple Fed. Credit Union,*
  720 F. Supp. 3d 427 (E.D. Va. 2024) ..................................................................14, 15

*Zabriskie v. Federal National Mortgage Ass'n,*
  940 F.3d 1022 (9th Cir. 2019) .................................................................................11

**Statutes & Regulations**

15 U.S.C. § 1681a(d) ......................................................................................................7, 10

15 U.S.C. § 1681a(d)(1).....................................................................................................8, 9

15 U.S.C. § 1681a(d)(2)(A)(i) .................................................................................................7

15 U.S.C. § 1681a(f) .......................................................................................................2, 3, 4

15 U.S.C. § 1681g...................................................................................................................3

15 U.S.C. § 1681i....................................................................................................................3

15 U.S.C. § 1681c...................................................................................................................3

15 U.S.C. § 1681n(a)(1)(A) ...................................................................................................13

15 U.S.C. § 1681n(a)(1)(A)(2) ..............................................................................................13

15 U.S.C. § 1681t(a) ..............................................................................................................15

Cal. Civ. Code § 1786.2(c) ....................................................................................................12

Cal. Civ. Code § 1786.2(d) ....................................................................................................12

Cal. Civ. Code § 1786.50(b) ..................................................................................................13

Colo. Rev. Stat. §§ 6-1-1702 to 1705 (2025)...........................................................................4

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

Ill. Stat. Ch. 775 § 5/2-102(L) (2026) ...................................................................................4

N.Y.C. Admin. Code § 20-871 (2023)....................................................................................4

Tex. Bus. & Com. Code § 552.001(1)-(2) (2026) ...................................................................4

11 Cal. Code Reg. § 7220 .......................................................................................................4

**Other Authorities**

CFPB Circular 2024-06 (Oct. 24, 2024), withdrawn 90 Fed. Reg. 20,084 (May 12, 2025) ............................................................................................................................13

Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations* (2011) ........................3

*Practice* (def. 1(c)), *Merriam-Webster* ................................................................................3

U.S. Patent No. 12,141,757 (filed Oct. 11, 2020)...................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

Eightfold is a software company, not a consumer reporting agency. It does not compile dossiers on applicants from third-party sources. It does not sell reports. Eightfold licenses AI-powered HR software to employers, which use it to help process job applications. At the employer's direction, the software processes an applicant's resume and other submitted information, predicts her likely skills based only on the information voluntarily provided, and compares her profile to a job description and employer-defined requirements to assess fit for that position. The product of that internal, applicant-driven process looks nothing like the consumer reports or background checks that FCRA targets, and Eightfold is nothing like the credit bureaus and screening companies that FCRA was designed to regulate.

Plaintiffs ask this Court to be the first to hold that a software company is a consumer reporting agency, and that the software's predictive output is a consumer report. But Plaintiffs cannot marshal any law to support their novel positions. The cases are all against them, as is agency guidance. In place of any legal support, Plaintiffs can only reassure the Court that Congress intended FCRA to adapt to technological developments. No doubt, FCRA is a lasting solution—just to a different problem. FCRA regulates consumer reporting agencies regardless of the technology they use. But the statute does not cover every party or software that touches consumer information. Adding AI to the mix does not change this.

On Plaintiffs' reasoning, any AI-powered software—indeed, any software at all—processing consumer information for employers becomes a consumer reporting agency. LinkedIn could qualify by displaying profiles in an employer's search based on "relevance." A candidate-testing platform that grades and ranks applicants' writing samples would qualify. And applicant-tracking systems that sort resumes and flag missing qualifications—the kind employers have used for decades—could fall under their interpretation. None of that is a reasonable reading of the statute.

Plaintiffs seek to conscript FCRA into an all-purpose regime for regulating employer-

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

1

related AI. That request is better directed to Congress than this Court. Legislation specific to AI is already in the works at the federal level, and States across the country, including California, have begun implementing their own regulatory frameworks. Because Plaintiffs cannot plausibly allege that Eightfold is regulated by existing legislation, the Complaint should be dismissed.

## ARGUMENT

**I.      The FCRA claim fails because Eightfold is not plausibly a consumer reporting agency.**

Plaintiffs cannot conclusorily assert that Eightfold sells consumer reports as a consumer reporting agency. *Cf.* Opp'n 9-11. Rather, they must allege enough facts to show that Eightfold plausibly satisfies the statutory definitions. Plaintiffs fall short for four independent reasons.

**A.      Eightfold is in the business of licensing software, not assembling or evaluating information.**

First, Eightfold does not itself engage "in the practice of assembling or evaluating" consumer information. 15 U.S.C. § 1681a(f). Eightfold licenses software; employers use that software to analyze information submitted by job applicants. Eightfold, as the software provider, does not plausibly do any assembling or evaluating as required to be a consumer reporting agency. At most, the software does the assembling and evaluating, at the employer's direction. Mot. 8-11.

Contrary to Plaintiffs' assertion, Opp'n 13, the Complaint alleges just that: "Eightfold provides employers with *an AI tool that assembles and evaluates* information about employees and job applicants." Compl. ¶ 57 (emphasis added). "Eightfold's 'Talent Intelligence Program' *enables employers* to create job profiles, assemble internal and external data for job applicants, and generate web pages where applicants can apply to jobs." *Id.* ¶ 58 (emphasis added). "Eightfold's *Evaluation Tools then evaluate and rank* applicants." *Id.* (emphasis added). In particular, Plaintiff Kistler "applied for several jobs with Paypal for which Paypal uses Eightfold's Evaluation Tools to assemble and evaluate consumer data." *Id.* ¶ 80. Plaintiff Bhaumik applied to Microsoft, which "uses Eightfold's Evaluation Tools to assemble and evaluate applicant data." *Id.* ¶ 99. On the Complaint's own telling, Eightfold is not the one assembling and evaluating—the employers are.

Plaintiffs now urge this Court to collapse Eightfold and its software. Opp'n 12-13. But FCRA defines a consumer reporting agency as a "*person*" who "regularly engages … *in the practice of* assembling or evaluating consumer credit information." 15 U.S.C. § 1681a(f) (emphases added). In other words, the defendant must be the one "professionally engaged in" collecting consumer information. *Practice* (def. 1(c)), *Merriam-Webster*. The FTC, a key implementer of FCRA for decades, has long drawn this line. Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations* at 29 (2011). And *Gundersen* recently applied it, holding that FICO was not a consumer reporting agency because it did not produce reports itself but instead "licens[ed] its scoring software tools" to credit bureaus. *Gundersen v. Equifax Info. Servs., LLC*, 683 F. Supp. 3d 1270, 1272 (D. Utah 2023).

Plaintiffs never engage with the statute's text or the FTC's interpretation. Opp'n 12-14. They try to distinguish *Gundersen* by calling the software there "hands-off." *Id.* at 13. But that software was not materially different from Eightfold's. FICO licensed its "software to the bureaus and maintain[ed] [it] through software updates." *Gundersen*, 683 F. Supp. 3d at 1272. FICO "retain[ed] ownership at all times of the algorithm embedded in the software" and "dictate[d] and decide[d] how to weigh individual pieces … in order to produce a final evaluation." *Id.* at 1272-73 (internal quotation marks omitted). Yet FICO was still separate from its software; although "FICO's *algorithm* … assembles and evaluates consumer credit information," FICO itself did not. *Id.* at 1272. So it is here. That customers use Eightfold's software to assemble and evaluate consumer information does not make Eightfold a consumer reporting agency.

A contrary rule would subject a whole new group of entities to FCRA's ill-fitting requirements. Consumer reporting agencies must limit the types of information in a consumer's file, 15 U.S.C. § 1681c, disclose the contents of a file and the parties accessing it, *id.* § 1681g, and permit consumers to dispute inaccuracies, *id.* § 1681i. Those requirements make little sense for software providers who, "beyond licensing [their] … software tools" to other parties, "do[] not have any role in the generation of any" report and are "neither aware nor involved in the transaction."

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

3

*Gundersen*, 683 F. Supp. 3d at 1272. That is why new AI-specific regulations—which Plaintiffs conspicuously avoid—require software "developers" to ensure their AI models are technologically sound, safe, and free from bias, and place consumer-facing requirements, like notice and accuracy, on the "deployers" of the software.[1] Plaintiffs cannot attempt to stretch FCRA to do more.

**B.      Nor does Eightfold's software assemble or evaluate as consumer reporting agencies do.**

Second, Eightfold is not a consumer reporting agency because its software does not "assemble" or "evaluate" consumer information as a credit bureau or background-check company does. 15 U.S.C. § 1681a(f). Consumer reporting agencies gather consumer information from third-party sources, store it in dossiers, assess creditworthiness or risk, and produce and sell general-purpose reports on request. Eightfold's customers use its software to process a candidate's resume provided by the applicant, predict likely skills, and assess fit for a particular position—facilitating the initial review that HR personnel would otherwise perform manually. Mot. 11-13.

1. Plaintiffs insist that Eightfold's software collects information from third-party sources, making it a classic consumer reporting agency. But the Complaint offers nothing beyond conclusory speculation. No specifics are alleged—because there are no specifics to be had. The Complaint does not identify the "third-party sources" from which Eightfold allegedly pulls, Opp'n 4,[2] nor "what information" is pulled, nor how that information differs from what the applicant already provided. *Thompson v. Nationstar Mortg. LLC*, No. 17-cv-2864, 2017 WL 3232549, at *5 (N.D. Cal. July 31, 2017); *see also Haroff v. Experian Info. Servs., Inc.*, No. 18-cv-2154, 2019 WL 4168729, at *5 (D. Nev. Sept. 3, 2019). Plaintiffs cannot rely on "information and belief" for an

---

[1] *See, e.g.*, Colo. Rev. Stat. §§ 6-1-1702 to 1705 (2025); Ala. H.B. 351 §§ 5, 8 (2026); 11 Cal. Code Reg. § 7220; Ill. Stat. Ch. 775 § 5/2-102(L) (2026); Tex. Bus. & Com. Code § 552.001(1)-(2) (2026); N.Y.C. Admin. Code § 20-871 (2023).

[2] The only specific sources that Plaintiffs point to—"LinkedIn, Stack Overflow, and Github"— are all professional platforms with applicant-controlled profiles. Compl. ¶ 65. When a candidate has voluntarily linked that public profile in her resume, the software simply displays those profiles on the interface for the employer's convenience. Mot. 4, 5.

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

4

assertion so central to their theory. Compl. ¶¶ 89, 106; *see, e.g.*, *Diaz v. Chase*, 416 F. Supp. 3d 1090, 1097 (D. Nev. 2019); *Johnson v. Experian Info. Solns., Inc.*, No. 18-cv-114, 2019 WL 951425, at *2 (E.D. Cal. Feb. 27, 2019).

Even if they could, Plaintiffs' own documents "contradict [this] allegation upon which their entire complaint hinges." *Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014). Allegations are not accepted as true when "contradict[ed]" by "documents that are referenced in," *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008), or "referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Plaintiffs cannot "select[] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Plaintiffs cite over a dozen articles from and about Eightfold, each making clear that Eightfold processes information provided by applicants and does *not* pull information about them from third-party sources outside their knowledge and control. For example, Plaintiffs assert that Eightfold's Match Score is based on third-party data. But the cited article shows the opposite. Compl. ¶ 74 n.39; *see* Dkt. 29-3. Eightfold's AI model "processes information obtained from both the job position and the candidate." Dkt. 29-3, at 3. The employer provides "job descriptions, job postings, or inputs … such as desired skills, experience, or education." *Id.* "The candidate typically provides a resume or a job application that conveys work history, education, skills, and so on." *Id.* The Match Score is based on those "data inputs," not mysterious third-party sources that Eightfold purportedly collects for this purpose. *Id.*

Plaintiffs rely heavily on one of Eightfold's patents to speculate that Eightfold's software is collecting data from third-party sources. Opp'n 4. But a patent is not plausible support for what Eightfold's software is practicing, and Plaintiffs offer no caselaw suggesting it is. After all, "the grant of a patent does not provide the patentee with an affirmative right to practice the patent but merely the right to exclude." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

5

1271, 1275 (Fed. Cir. 2009). The patent itself recognizes this is just "one embodiment" of Eightfold's invention. U.S. Patent No. 12,141,757 col. 6 l. 15 (filed Oct. 11, 2020). And despite Plaintiffs' ominous gesturing, the invention's "supplemental candidate data from public data sources" is limited to "awards given to the candidate, publications by the candidate and associated conferences, blog postings by the candidate, online work samples (e.g., Github postings), and patents on which the candidate is an inventor." *Id.* col. 7 l. 10, 16-20. In other words, at best, the patent contemplates pulling accomplishments a candidate has already listed on her resume.

2. Plaintiffs suggest that Eightfold still qualifies as a consumer reporting agency because its AI model is trained on third-party data. Opp'n 13. But even Plaintiffs acknowledge this data is "anonymized" and "aggregated," Compl. ¶ 61, and cannot be tied to any particular applicant. That is dispositive, not "irrelevant." Opp'n 13. FCRA cares only about factual information tied to an "identifiable" person. *McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006). Plaintiffs cannot get around this by emphasizing that anonymized data is used "to generate inferences tied to an identifiable person." Opp'n 13. In *Gundersen*, FICO's software generated credit scores for individual consumers using an algorithm trained on "depersonalized data." 683 F. Supp. 3d at 1272-73. That the anonymized training data informed the algorithm's "criteria" and "weight" did not mean the algorithm was "evaluating … information *relating to any individual consumer*." *Id.* at 1273. Using anonymized data to train an algorithm that processes consumer-provided information is not the same as gathering information on a particular consumer from outside sources. FCRA regulates the latter, not the former.

3. Because Eightfold's software does not gather factual information from outside sources or provide general-purpose judgments on an applicant, it does not "assemble or evaluate" as FCRA requires. Plaintiffs retreat to reading these verbs in a vacuum, asserting that the software is technically assembling and evaluating. Opp'n 9-10. But these verbs have to be read in their "statutory context," *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1202 (9th Cir. 2022), not "broadly and in isolation," *Dubin v. United States*, 599 U.S. 110, 117 (2023). FCRA does not "target[]" all

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

processing of consumer information by "any party." *Cal. River Watch v. City of Vacaville*, 39 F.4th 624, 630, 632 (9th Cir. 2022). Congress chose verbs that capture the "crux" of what consumer reporting agencies do: assembling information from outside sources and providing risk- or character-based judgments that follow them around. *Dubin*, 599 U.S. at 117. Eightfold's software, with its subjective position-specific predictions of fit based on applicant-provided information and employer-provided job requirements, does neither.

### C.     The software's output is not a consumer report.

Third, Eightfold's software does not produce a "consumer report." 15 U.S.C. § 1681a(d). Eightfold is not selling background checks or comprehensive employment reports running down references and confirming an applicant's education. The software offers insights about a candidate's skills, career trajectory, and likely fit for a specific role based exclusively on information provided by the applicant and the employer related to that role. These opinions do not bear on creditworthiness, character, general reputation, or personal characteristics; do not follow the applicant from job to job; and do not determine eligibility to hold a position. Mot. 13-16.

1. Plaintiffs insist that the software's output looks like a classic consumer report because it contains "information from many different sources beyond what is provided by the applicant," and is not limited to "information solely as to transactions or experiences" between the applicant and Eightfold. Opp'n 15-16 (citing 15 U.S.C. § 1681a(d)(2)(A)(i)). But Plaintiffs miss the key feature of a consumer report: *factual information* about a consumer gathered from various sources. Here, the facts about the applicant—her education, work experience, current position—come from the applicant herself. To be sure, the software makes "inferences about a candidate's … capabilities" based on her resume, informed by aggregated, anonymized "data gathered from third-party websites and other companies." *Id.* at 16. But those opinions are still based on the software's own "transactions or experiences" with the applicant. 15 U.S.C. § 1681a(d)(2)(A)(i). No fact about her is gathered from any other source.

*Sweet v. LinkedIn Corp.*, No. 14-cv-4531, 2015 WL 1744254 (N.D. Cal. Apr. 14, 2015),

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

7

makes this clear. Job seekers created profiles and input their information into LinkedIn's platform. Because users "provide[d] LinkedIn with information about their employment histories," "the information contained in these [profiles] came solely from LinkedIn's transactions or experiences with these" users. *Id.* at *4-5. LinkedIn was not producing consumer reports because, like Eightfold, it was not gathering information on consumers from anybody but the consumers themselves.

Plaintiffs try (and fail) to distinguish *Sweet* by emphasizing that the applicant's profile in *Sweet* was exclusively "provided by the applicant." Opp'n 16. But the same is true here: The employer provides the job description, and anonymized data sets inform the software's opinions, but the applicant is the *sole* source of factual information about herself. Plaintiffs suggest that Eightfold lacks "first-hand knowledge" of the applicant's information, while LinkedIn received information "directly." *Id.* at 15-16 (emphasis omitted). But Eightfold's software receives information first-hand in the same way LinkedIn did. As the intermediary between applicant and employer, the software gets the applicant's resume directly from her and the job criteria directly from the employer. Nor does it matter that applicants were LinkedIn's "clients" while Eightfold's customers are the employers. *Cf.* Opp'n 16. Eightfold might not have a "direct relationship" with applicants, *id.* at 16 n.9, but its software is receiving the data directly from employers and processing it. Eightfold's software acts only on information provided by the applicant and the employer; that looks nothing like a consumer report.

2. Plaintiffs next fault Eightfold's software for making "inferences about a candidate's personality and capabilities," insisting that even "subjective assessments" and "opinions" can constitute consumer reports. *Id.* at 16. To be clear, the software predicts skills, career trajectory, and likely fit. It makes no inferences about the applicant's "personality," like whether she is a "team player" or "go-getter." Mot. 4; *see* Dkt. 29-2, at 3-4. Either way, the software's "opinions" are not the kind of information FCRA regulates. Plaintiffs emphasize the statute's "broad" definition and insist that the output "bear[s] on" an applicant's traits. Opp'n 14 (quoting 15 U.S.C. § 1681a(d)(1)). But the statute must be understood in context. The listed categories—"credit

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living"—cover risk- and character-based factual information bearing on "eligibility" for credit, employment, or insurance. 15 U.S.C. § 1681a(d)(1). Not included are subjective assessments about a candidate's ability, such as likely skills or predicted fit. *See, e.g.*, *Bergen v. Martindale-Hubbell, Inc.*, 337 S.E.2d 770, 771 (Ga. Ct. App. 1985) (holding that FCRA "eligibility" did not cover ranking of legal ability).

Plaintiffs cannot point to a single case applying FCRA to something even remotely close to a Match Score. Instead, half the cases they cite (at 14, 17) involve general-purpose judgments about a person that follow him around. For instance, in *Skiles v. Tesla, Inc.*, 440 F. Supp. 3d 1012 (N.D. Cal. 2020), Experian (a credit bureau) provided Tesla with a "Mosaic score"—a report categorizing customers "according to likely income, spending habits, and other characteristics" to "anticipate the behavior, attitudes, and preferences of their most profitable customers." *Id.* at 1013, 1015. The plaintiff sought a test drive, and Tesla ran his Mosaic score. *Id.* at 1013-14. The Mosaic score plausibly counted as a consumer report because it "[b]ears on [the plaintiff's] creditworthiness" and pulls his "property" and "credit and automotive data" from a "consumer database of 126 million households." *Id.* at 1015; *see also Finlay v. MyLife.com Inc.*, 525 F. Supp. 3d 969, 974, 980 (D. Minn. 2021) (offering "reputation score" based on "public records" and "personal reviews written by others"). The other cases involve outside parties reviewing criminal records and making risk-based judgments that determined whether the person got the job. *See Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 631 (D. Ore. 2015) (labeling applicants with "red" flags); *Ernst v. Dish Network, LLC*, 49 F. Supp. 3d 377, 382 (S.D.N.Y. 2014) (labeling applicants as "high risk"). Those cases are not analogous.

3. Plaintiffs finally assert that the software output determines an applicant's "eligibility" for the position. Opp'n 17-18. But "providing … a list of scored and ranked applicants" helps employers process and sort resumes. *Id.* at 18. It does not determine, "in whole or in part," whether an applicant is "eligible" to hold the position. Here, no matter an applicant's predicted skills or

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

Match Score, the software never "rejects" a candidate. Dkt. 29-2, at 3; *cf. Magallon*, 311 F.R.D. at 631 (if employee is given "red flag," she is not "placeable" by staffing agency); *Ernst*, 49 F. Supp. 3d at 382 (if contractor is marked "high risk," he cannot receive work assignments or visit customers). The software is simply predicting skills and fit for the employer's consideration. At all times, the applicant remains eligible to proceed in the application process. And employers can and do hire candidates with lower Match Scores. The Complaint never alleges otherwise.

4. Plaintiffs complain that they cannot see the software output to correct their predicted skills or likely fit. Opp'n 6. But that has no bearing on whether it qualifies as a consumer report. *See* 15 U.S.C. § 1681a(d). And in any event, the visibility that Plaintiffs seek goes far beyond that offered by FCRA. The statute ensures consumers can view and correct objective factual information bearing on creditworthiness or character, stored in dossiers. It is not an all-purpose vehicle for accessing *subjective* insights by a business. Imagine an HR employee performing the same job as Eightfold's software. She reviews each application, flags potential skills, and ranks applicants for the hiring manager. No one would suggest the applicant is entitled to access her notes. That an employer conducts this process at scale through software does not turn those opinions into a consumer report.

**D.    Eightfold does not sell its software's output to any third parties.**

Finally, Eightfold does not supply consumer reports at arm's length to any "third party." 15 U.S.C. § 1681a(d). Eightfold's software is embedded in its customers' HR processes, and the output is intended solely for the customer's internal use. Eightfold's purpose is to facilitate the customer's review of applications, not to furnish consumer reports to third parties. Mot. 17-19.

Plaintiffs assert that they have sufficiently alleged Eightfold "sells reports" to employers. Opp'n 18. But as with other software-as-a-service, employers only plausibly purchase access to Eightfold's software, not individual outputs or "reports" on applicants. Neither the Complaint nor the documents cited therein suggest otherwise. No employer can purchase a one-off report on an applicant, as it could with a background-check company or credit bureau.

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

Plaintiffs dispute that Eightfold's software "integrate[s]" into an employer's "HR infrastructure," Opp'n 12 n.6, and object that Eightfold "does much more than merely facilitate employer review," *id.* at 18. But again the Complaint says the opposite: "Eightfold provides employers with an AI tool" that "enables employers to create job profiles, assemble internal and external data for job applicants, and generate web pages where applicants can apply to jobs" before "evaluat[ing] and rank[ing] job applicants." Compl. ¶¶ 57-58.

Like the software provider in *Zabriskie v. Federal National Mortgage Ass'n*, 940 F.3d 1022 (9th Cir. 2019), Eightfold plausibly acts to "facilitate a transaction between" employer and applicant, not "for the purpose of furnishing consumer reports to third parties." *Id.* at 1027. Eightfold provides software that allows its customers to "import" information about an individual, "analyze" the imported information, and "generate[] a report" about the potential transaction. *Id.* at 1025-26. Trying to distinguish *Zabriskie*, Plaintiffs suggest the software provider there was different and held not to furnish consumer reports because assembling and evaluating was the software provider's "alternative purpose," whereas for Eightfold, it is the "core business." Opp'n 19. But Eightfold's core business *is* helping employers process applications, as the Complaint and cited documents illustrate. *See supra* pp. 2-4. Finally, Plaintiffs suggest that Eightfold must be providing reports to "third parties" because the output is "indisputably created for and used by employers unaffiliated with Eightfold." *Id.* at 14. But the employers, its licensed customers, are no more "unaffiliated" with Eightfold than the lenders were with the software provider in *Zabriskie*. Eightfold's software processes applications at the employer's direction; it does not sell consumer reports to them.

*   *   *   *   *

FCRA regulates consumer reporting agencies, no matter their technologies. But it does not regulate any and all technology that touches consumer information. Eightfold is not a consumer reporting agency, and its software's output is not a consumer report.

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

## II.     The ICRAA and UCL claims fail for the same reason.

The derivative claims under ICRAA and the UCL likewise fail, as they rest on the same theory as the FCRA claim.

Plaintiffs attempt to put daylight between FCRA and ICRAA, suggesting that ICRAA covers broader conduct, like "collect[ing]" consumer information. Opp'n 19. But ICRAA still regulates only "consumer reports" on "a consumer's character, general reputation, personal characteristics, or mode of living" issued by an "investigative consumer reporting agency." Cal. Civ. Code § 1786.2(c)-(d). Like FCRA, ICRAA is not an all-encompassing statute regulating any interaction with consumer information. *See Connor v. First Student, Inc.*, 423 P.3d 953, 956 (Cal. 2018).

Having failed to state a claim under FCRA or ICRAA, Plaintiffs also fail to state a claim under the "unlawful" prong of the UCL. Plaintiffs do not defend their claims under the "unfair" or "fraudulent" prongs, so those must be dismissed. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204-05 (N.D. Cal. 2014). And the "unlawful" UCL claim also independently fails because "the operative complaint does not allege that [Plaintiffs] lack[] an adequate legal remedy." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see* Compl. ¶¶ 150-55. Plaintiffs *argue* that they have no adequate remedy because FCRA and ICRAA provide only damages while the UCL permits injunctive relief. But injunctive relief under the UCL is preempted by FCRA. *See infra* p. 15. And argument in opposition cannot substitute for an *allegation* in the complaint. *Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020).

## III.     The requested remedies besides actual damages should be struck.

At the very least, all requests for damages beyond (a) actual damages based on denial of employment and (b) statutory damages under ICRAA for the two individual plaintiffs should be struck. Mot. 23-25. Plaintiffs suggest this Court lacks the power to dismiss remedies from a complaint. Opp'n 19 & n.12. But remedies can be, should be, and are routinely dismissed on a motion to dismiss when "precluded as a matter of law." *Gatabi v. FDA*, No. 24-cv-2398, 2024 WL 5077100, at *8 (N.D. Cal. Dec. 10, 2024); *see, e.g.*, *Tavares v. Capitol Recs.*, No. 12-cv-3059,

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

12

2013 WL 968272, at *5 n.1 (N.D. Cal. Mar. 12, 2013); *Garcia v. M-F Athletic Co.*, No. 11-cv-2430, 2012 WL 531008, at *4 n.4 (E.D. Cal. Feb. 17, 2012) (noting this "long-held" practice).[3]

### A.   Plaintiffs have not plausibly alleged punitive or statutory damages.

Punitive damages under FCRA and ICRAA and statutory damages under FCRA must be dismissed because nothing plausibly suggests that Eightfold violated these statutes willfully or with gross negligence. 15 U.S.C. § 1681n(a)(1)(A), (2); Cal. Civ. Code § 1786.50(b). While willfulness and recklessness can present a "fact question for the jury," Opp'n 20, those allegations fail "as a matter of law" where, accepting the pled facts, the defendant's legal defense is at least "objectively reasonable." *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017); *accord Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007); *see, e.g.*, *Andrade v. Desert Champions LLC*, 113 F. Supp. 3d 1020, 1025-26 (N.D. Cal. 2015). Plaintiffs cite no case—in California or elsewhere—that would render Eightfold's defense objectively unreasonable. Mot. 24-25.

Plaintiffs rest on a now-withdrawn CFPB Circular. Opp'n 21-22; *see* CFPB Circular 2024-06 (Oct. 24, 2024), withdrawn 90 Fed. Reg. 20,084 (May 12, 2025). But even that guidance does not make Eightfold's interpretation of FCRA unreasonable. The Circular opines that "background dossiers" on employees and "reports that convey scores assessing a current worker's risk level or performance" can count as consumer reports. Circular 1. These dossiers are "compiled from databases collecting public records, employment history, collective-bargaining activity, or other information about a worker," like "sales interactions," "driving habits," and "time spent off-task." *Id.*

---

[3] Plaintiffs also confusingly suggest that, under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), "a state statute like the ICRAA cannot limit the remedies available in federal court." Opp'n 23. That muddles the inquiry. *Espinosa v. Bluemercury, Inc.*, No. 16-cv-7202, 2017 WL 1079553, at *3 (N.D. Cal. Mar. 22, 2017). The *Erie* doctrine requires that federal courts apply state substantive law—including the remedies available for violations of state causes of action, *see Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945)—and federal procedural law. ICRAA does not provide the class-wide statutory damages Plaintiffs seek. And nothing in Federal Rule 23 dictates the forms of substantive relief available in a class action. This Court should thus "follow California state law as written." *Espinosa*, 2017 WL 1079553, at *3; *see id.* ("limit[ing] the relief available to the [ICRAA] class to actual damages, as opposed to statutory damages").

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

13

at 1-2. The scores, in turn, aim to "predict worker behavior, including potential union organizing activity and [the] likelihood that a worker will leave their job." *Id.* at 3. These dossiers and scores look nothing like the challenged fit-based output here.

Pointing to a single sentence in the (withdrawn) Circular, Plaintiffs emphasize that "an entity could 'assemble' or 'evaluate' consumer information within the meaning of the term 'consumer reporting agency' if the entity collects consumer data in order to train an algorithm that produces scores or other assessments about workers for employers." Opp'n 21-22 (quoting Circular at 5). But Plaintiffs take this out of context. The CFPB was opining that an entity compiling information from outside sources and evaluating consumers based on that information satisfies the "assemble or evaluate" element. The immediately following example illustrates this: "[T]he developer of a phone app that monitors a transportation worker's driving activity and provides driving scores to companies for employment purposes *could* 'assemble' or 'evaluate' consumer information if the developer obtains or uses data from sources *other than an employer receiving the report*, including from other employer-customers or public data sources, to generate the scores." Circular at 5-6 (emphases added). The CFPB did not suggest that using anonymized training data turns a software company into a consumer reporting agency, *cf.* Opp'n 21-22, presumably because that position has already been soundly rejected, *see Gundersen*, 683 F. Supp. 3d at 1272. Besides, as the CFPB recognized, Circular at 5-6, "assemble or evaluate" is just one part of the statute; an entity must actually be the one assembling, must compile the type of consumer information covered by the statute, and must furnish that information to third parties.

Even assuming "that the CFPB's guidance means what [Plaintiff] says," it still would not make Eightfold's interpretation unreasonable. *Va. Is for Movers, LLC v. Apple Fed. Credit Union*, 720 F. Supp. 3d 427, 443 (E.D. Va. 2024). The Circular is withdrawn; having been retracted, it cannot have reasonably put Eightfold "on notice." Opp'n 2. Besides, the Circular is simply a "general statement[] of policy" that does not "impose any legal requirements on external parties." Circular at 7. It was never "authoritative guidance." *Safeco*, 551 U.S. at 70 & n.19 (reasoning that

letter from FTC did not make reading unreasonable where it "did not canvass the issue" and "explicitly indicated that it was merely an informal staff opinion"). The Circular's purported reasoning would also "find[] no support in the text" or context of the statute, and would contradict the positions taken by the FTC. *Va. Is for Movers*, 720 F. Supp. 3d at 443. No amount of "discovery" could show that an objectively reasonable person in Eightfold's shoes should have known it was a consumer reporting agency. Opp'n 22.

**B.    Plaintiffs have not plausibly alleged injunctive or declaratory relief or nominal damages.**

Lastly, Plaintiffs' requests for injunctive and declaratory relief should be struck. FCRA permits actual, statutory, and punitive damages—not equitable remedies. The UCL cannot fill that gap, as Plaintiffs posit, because FCRA preempts "inconsistent" state laws. 15 U.S.C. § 1681t(a). Allowing plaintiffs to seek injunctive relief "through a state law vehicle would constitute an end-run around" that preemptive provision. *Roe v. LexisNexis Risk Solns. Inc.*, No. 12-cv-6284, 2013 WL 11246904, at *7 (C.D. Cal. Mar. 19, 2013). Nominal damages should also be struck for similar reasons. FCRA and ICRAA provide for only actual, statutory, and punitive damages; if a plaintiff fails to satisfy the requirements for those damages, she cannot seek nominal damages as a backup. Mot. 25.

## CONCLUSION

For the foregoing reasons and those stated in the motion, the Complaint should be dismissed with prejudice.

Dated: July 9, 2026                              Respectfully submitted,

                                                 */s/ Jeffrey Paul Ehrlich*
                                                 Jeffrey Paul Ehrlich (*Pro Hac Vice*)
                                                 **McGuireWoods LLP**
                                                 jehrlich@mcguirewoods.com
                                                 888 16th Street NW, Suite 500

Defendant Eightfold AI Inc.'s Reply in Support of Motion to Dismiss, No. 3:26-cv-01768-YGR

15

Washington, D.C. 20006
Telephone: 202-857-1700

Alicia A. Baiardo (SBN 254228)
**MCGUIREWOODS LLP**
abaiardo@mcguirewoods.com
Two Embarcadero Center
201 Clay Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-844-9944

Nicholas Hoffman (SBN 284472)
**MCGUIREWOODS LLP**
nhoffman@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310-315-8200

Jonathan Y. Ellis (*Pro Hac Vice*)
**MCGUIREWOODS LLP**
jellis@mcguirewoods.com
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: 919-755-6688

Grace G. Simmons (*Pro Hac Vice*)
**MCGUIREWOODS LLP**
gsimmons@mcguirewoods.com
1075 Peachtree St. NE
Atlanta, GA 30309
Telephone: 404-443-5718

*Attorneys for Defendant Eightfold AI Inc.*